

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LARRY EALY,                        :

            Plaintiff,             :

                                        Case No. C-3-90-159
      vs.                          :

                                        JUDGE WALTER HERBERT RICE
CITY OF DAYTON, et al.,            :

            Defendants.            :

---

DECISION AND ENTRY SUSTAINING DEFENDANT RICHARD
SCOTT DAVIS' MOTION FOR PARTIAL SUMMARY JUDGMENT
(DOC. #125), DECLARING MOOT DEFENDANT DAVIS' INITIAL
MOTION FOR SEPARATE TRIAL (DOC. #121), SUSTAINING
DEFENDANT DAVIS' CORRECTED MOTION FOR SEPARATE TRIAL
(DOC. #124) AND SETTING FORTH REASONS FOR NOTATION
ORDER OF SEPTEMBER 29, 1993, BY WHICH THE MOTION OF
DEFENDANTS CITY OF DAYTON, MICHAEL SIEKIERKA, ANDREW
A. BOOHER, STEVEN G. ABNEY, AND ROBERT S. PHILLIPS
FOR SEPARATE TRIALS (DOC. #105) WAS SUSTAINED;
DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING
IN PART PLAINTIFF LARRY EALY'S MOTION FOR PARTIAL
SUMMARY JUDGMENT (DOCS. ##135 AND 137), SUSTAINING
IN PART AND OVERRULING IN PART DEFENDANTS' MOTIONS
TO STRIKE THE DECLARATION OF W. ANTHONY WILLOUGHBY
(DOCS. ##145 AND 146) AND OVERRULING WITHOUT
PREJUDICE DEFENDANT DAVIS' MOTION IN LIMINE
REGARDING CERTAIN EVIDENTIARY MATTERS (DOC. #122)

---

This case arises from an unfortunate encounter on March

14, 1990, between Plaintiff Larry Ealy and Defendants Michael

Siekierka, Andrew A. Booher, Steven G. Abney, Robert S.

Phillips, and Richard Scott Davis. All of the named

Defendants were then employed as police officers by the City

of Dayton. Mr. Ealy alleges that the officers assaulted him,



unlawfully arrested him, and maliciously filed baseless charges against him.

The events of March 14, 1990, have already given rise to two criminal prosecutions, one of the Plaintiff, Larry Ealy, and one of Defendant Richard Scott Davis. These will be discussed in further detail below.

In light of this Court's Decision and Entry Sustaining in Part and Overruling in Part Defendants' Motion for Partial Summary Judgment and making other rulings (Doc. #104), the following claims described in the Third Amended Complaint remain in this civil action. Mr. Ealy asserts claims under 42 U.S.C. § 1983 against each of the individual Defendants and the City of Dayton for violation of his right to be free from unreasonable searches and seizures under the Fourth Amendment to the Constitution as it is applicable to state authorities through the Fourteenth Amendment. Mr. Ealy also asserts pendent claims under the law of the State of Ohio against the individual Defendants, alleging false arrest, defamation, and malicious prosecution.

Now at issue are six motions. Defendant Richard Davis has filed a motion for partial summary judgment (Doc. #125), a motion for separate trials (Doc. #124)[1], and a motion in limine seeking to exclude reference to the two criminal prosecutions and their results (Doc. #122). Plaintiff Larry

_____

[1] The motion filed at Doc. #124 was submitted as a corrected version of the motion filed at Doc. #121. Therefore, the motion at Doc. #124 is considered herein and the motion at Doc. #121 is declared moot.

AO 72A
(Rev. 8/82)

Ealy has filed a motion for partial summary judgment setting
forth certain findings of fact and law that he claims have
been decided in those previous trials.  Docs. ##135 and 137.
Attached to that motion is a declaration by Plaintiff's
counsel setting forth certain facts.  Defendant Davis has
moved to strike that declaration (Doc. #146), as have the
other Defendants (Doc. #145).

## I.   Defendant Richard Scott Davis' Motion for Partial Summary Judgment (Doc. #125)

Mr. Davis' motions for partial summary judgment and
separate trials mirror similar motions by the City of Dayton
and the other named Defendants upon which this Court has
already ruled.

In his motion for partial summary judgment, Mr. Davis
seeks judgment in his favor on Mr. Ealy's claims under 42
U.S.C. § 1983 with regard to the alleged deprivation of rights
under the Fifth, Eighth, and Fourteenth Amendments, and on Mr.
Ealy's claims under 42 U.S.C. § 1985.  The analysis of these
claims in this Court's Decision and Entry of December 16, 1992
(Doc. #104 at 10-13), is as applicable with regard to Mr.
Davis as it is to the other Defendants.  For the reasons set
forth in that opinion, Defendant Richard Scott Davis' Motion
for Partial Summary Judgment on these particulars (Doc. #125)
is sustained.

AO 72A
(Rev. 8/82)

## II. Defendant Davis' Motion for Separate Trial (Doc. #124)

Also pending is Mr. Davis' motion for separate trials. By that motion, Mr. Davis joined in the motion of the City of Dayton and the other named Defendants on the same matter. Doc. #105. Specifically, the Defendants request that the claims against the City of Dayton be tried separately from the claims against the individual Defendants. The Court sustained the original motion (by the City et al.) for separate trials (Doc. #105) by notation order on September 29, 1993. Having considered the response filed by Mr. Ealy (Doc. #134) and the reply thereto filed by the City (Doc. #136), the Court reaffirms that order and sustains Mr. Davis' motion to the same effect.

Rule 42(b) of the Federal Rules of Civil Procedure provides, in part, that, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . ." If a single trial were held on all of the claims in this case, evidence offered against the City regarding incidents of alleged misconduct by police officers, unrelated to the incident in question in this case but relevant to the question of municipal liability for a policy or practice, would be highly prejudicial to the individual Defendants. The questions regarding the liability of these individual Defendants should be decided by the jury only on the facts of the particular encounter on which this case is based. That is to say, these individual Defendants

cannot be made to bear the burden of answering for all of the
alleged misdeeds of every past and current Dayton police
officer. A jury must be allowed to consider the evidence
regarding this incident with its focus on that evidence
unimpaired by a torrent of information concerning the conduct
of police officers in other situations at other times.

In order to avoid prejudice, pursuant to Rule 42(b),
separate trials were ordered in this case by the Notation
Order of September 29, 1993. The first trial will be had on
Mr. Ealy's claims against the individual Defendants (Messrs.
Davis, Siekierka, Booher, Abney, and Phillips) arising from
the events of March 14, 1990. Assuming a finding in favor of
the Plaintiff and against one or more or all of the individual
Defendants, at some time following the conclusion of that
proceeding, if, for some reason, the City has refused to
indemnify that Defendant or those Defendants found liable by
the jury, trial will commence on Mr. Ealy's claims against the
City of Dayton regarding the alleged existence of a
constitutionally infirm municipal policy or practice.

## III. Plaintiff Larry Ealy's Motion for Partial Summary Judgment (Docs. ##135 and 137)[2]

### A. Burdens of the Parties on a Motion for Summary Judgment

The relative burdens of the parties on a motion for
summary judgment, which are equally applicable on a motion for

---

[2] The documents numbered 135 and 137 are identical. Reference will be
made to the later filed, being number 137. In reality, only one
Plaintiff's motion for partial summary judgment is before this Court.

partial summary judgment, were set forth in the Decision and Entry of December 16, 1992 (Doc. #104), at pages three through five. The Court would reemphasize the portion of that discussion that describes the burden upon the moving party to direct the attention of the Court to those portions of the record that support its assertions. See Doc. #104 at 3.

The Declaration of W. Anthony Willoughby is apparently attached to Mr. Ealy's motion for partial summary judgment in order to provide the documentary support on the record that is required of a movant for summary judgment. For organizational purposes, the admissibility of relevant portions of that declaration will be discussed as they become pertinent to the consideration of Mr. Ealy's motion. To the extent that the Court disregards, for reasons stated, any part of the declaration, the Motions to Strike of the Defendants (Docs. ##145 and 146) are sustained. To the extent that the Court considers, for reasons stated, any part of the declaration, the Motions to Strike are overruled.

## B.  Interpretation of and Rulings Upon Mr. Ealy's Motion

Mr. Ealy's motion for partial summary judgment is presented as a series of proposed findings of fact and law.[3] The proposed findings may be categorized as those that appear to relate to the prior criminal prosecution of Mr. Ealy (viz.,

---

[3]  These are set forth in numbered paragraphs in a section entitled "Plaintiff's Statement of Uncontroverted Issues of Fact and Conclusions of Law."  Doc. #137 at 5-10.

paras. 1 - 6, 10 - 15, and 16 of the "Uncontroverted Issues of Fact" and numbered paragraphs 6, 8, and 14 of the "Conclusions of Law"), those that appear to relate to the prior criminal prosecution of Mr. Davis (viz., numbered paragraphs 2 - 5, 13, 14, 17, and 18 of the "Uncontroverted Issues of Fact"), those that appear to relate to the question of municipal liability (viz., numbered paragraphs 7 - 9 of the "Uncontroverted Issues of Fact" and numbered paragraphs 7 and 8 of the "Conclusions of Law"), those that purport to state a rule of law concerning the doctrine of collateral estoppel (viz., numbered paragraphs 1 - 5 of the "Conclusions of Law"), and those that purport to state a rule of law concerning the availability of qualified immunity to the Defendants (viz., paragraphs 7 and 9 - 11 of the "Conclusions of Law").[4]

---

[4] Some paragraphs are included in more than one category because they make more than one assertion or make a single assertion that appears to be relevant to more than one aspect of this case. It will be noted that numbered paragraphs 12 and 13 of the "Conclusions of Law" are not included in any category.

Numbered paragraphs 12 and 13 of the "Conclusions of Law" read, in their entirety, as follows:

> 12. Under Federal law plaintiff had the initial burden of proof that he was factually innocent and that there was no reasonable cause to believe that he had committed the offenses charged, with the burden then shifting to the People to prove that there was in fact such reasonable cause to believe that he had committed the offenses charged;
> 13. Under relevant Ohio state law, plaintiff had the burden of proof by a preponderance of the evidence that his Fourth, Fifth and Fourteenth Amendment rights were violated by improper detention, arrest and use of unreasonable or excessive force[.]

These paragraphs seem to have been included through inadvertence, as they are unintelligible. The Court, therefore, declines to adopt them as findings, but intends no determination of fact or law to be inferred from such declination.

- 7 -

## 1. Suggested Findings Concerning the Prior Criminal Prosecution of Mr. Ealy

With regard to those issues relating to the criminal prosecution of Mr. Ealy, the Court declines to make any of the findings suggested. This is so because (contrary to the assertion in numbered paragraph two (2) of the Declaration of W. Anthony Willoughby) no certified copies of documents from the record of that case are before this Court. Indeed, Mr. Ealy has provided this Court with no documentation at all (certified or not) from the record of his criminal trial. Therefore, it is impossible for this Court to find that Mr. Ealy has met his burden, on this motion for partial summary judgment, of adducing some quantity of admissible evidence to support any allegedly uncontroverted or uncontrovertible fact with regard to the proceedings or findings in that case.

For example, Mr. Ealy appears to be alleging that the court in that case held some sort of special hearings at which it found that Mr. Ealy's "Fourth and Fifth Amendment rights were violated" and that he was "factually innocent and that no reasonable cause exists to believe that plaintiff committed the offenses for which he was arrested and tried." Doc. #137 at 11. Mr. Ealy points to no place in the record before this Court where these allegations might find support.

As noted above, it is the responsibility of a party advocating summary judgment to direct the Court's attention to supporting materials in the record. Mr. Ealy has utterly failed to do so with regard to the significance, or even the

- 8 -

existence, of the alleged proceedings and findings in the criminal case against him.

## 2. Suggested Findings Concerning the Liability of the City of Dayton

Similarly, Mr. Ealy has failed to support his asserted "uncontroverted" facts pertinent to the liability of the City of Dayton. In fact, those assertions appear to controvert themselves. Mr. Ealy first alleges that a police sergeant "acted with the final, delegated authority from the City of Dayton to conduct the investigation and to recommend the filing of criminal charges against plaintiff" and then makes precisely the same allegation with regard to the Chief of Police without offering any explanation as to how both of these differently situated persons could act with final authority on the same matter. Doc. #137 at 6, paras. 8 and 9.

Mr. Ealy's assertions lack not only internal consistency, but external support, as well. As with the assertions regarding the criminal prosecution against him, Mr. Ealy makes no citations to any materials in the record that support these alleged facts. The Court infers that he intends to rely upon the declaration of his attorney and a few pages excerpted from a deposition of Chief Newby, both items submitted with the motion, for support on this issue. Mr. Willoughby's declaration contains statements concerning the involvement of Sergeant John Barnes and Chief Newby in the criminal prosecution of Mr. Ealy, but is devoid of any indication that these statements are "made on personal knowledge" as required

- 9 -

by Rule 56(e) of the Federal Rules of Civil Procedure. The Court therefore declines to consider those statements. The submitted deposition testimony of Chief Newby might stand as evidence that Chief Newby is familiar with certain general policies of the police department. It does not in any way indicate that he is the source of any policies; more precisely, it does not show that he acts with "final, delegated authority from the City of Dayton" on any matter at all.

### 3. Suggested Findings Concerning Qualified Immunity

Although his factual allegations pertinent to the issue of municipal liability are unsupported, Mr. Ealy does accurately state an aspect of the law of municipal liability in his assertion that, "the City of Dayton cannot assert good faith, qualified immunity[.]" In <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980), the Supreme Court stated unambiguously that a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983."

Mr. Ealy's motion also seeks a declaration of the law with regard to the availability of qualified immunity to the individual defendants in this case. Doc. #137 at 9, paras. 9 - 11. He is referred to page 16 of this Court's Decision and Entry of December 16, 1992 (Doc. #104).[5] It is there stated:

---

[5] He is also referred to pages 10 - 11 of that order (Doc. #104) that he might be reminded that the allegations concerning violations of his rights under the Fifth, Eighth, and Fourteenth Amendments have already been

"For the officers to show they are entitled to qualified immunity, they must show they thought that their actions were reasonable at the time they acted and that their actions were consistent with established law." That conclusion was and is based upon reference to <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987), and <u>Yates v. City of Cleveland</u>, 941 F.2d 444 (6th Cir. 1991).

### 4. Suggested Findings Concerning the Prior Criminal Prosecution of Mr. Davis and Collateral Estoppel

The bulk of Mr. Ealy's memorandum submitted with his motion is concerned with issues of collateral estoppel and the prior criminal prosecutions of Mr. Ealy and Mr. Davis. As noted above, Mr. Ealy has failed to produce any admissible evidence concerning his own trial, and the Court therefore declines to consider his arguments concerning issues that might have been litigated in those proceedings.[6] However, Mr. Ealy has fairly raised certain arguments concerning the prior criminal prosecution of Mr. Davis, and has attached to his motion a copy[7] of the judgment against Mr. Davis, which makes

---

resolved. <u>See</u> Doc. #137 at 5, para. 2(a) (making apparent the necessity of such a reminder).

[6] "[P]laintiff herein concedes that there is no collateral estoppel effect from the jury's verdict of acquittal [in the prior criminal prosecution brought against him]" but alludes to some other alleged proceedings incident to his criminal trial as having such effect. Doc. #137 at 12. Plaintiff is correct to make such a concession regarding the acquittal itself. Defendants correctly cite <u>Walden v. State</u>, 47 Ohio St.3d 47, 51-52, 547 N.E.2d 962, 966 (1989), as reiterating the Ohio rule that an acquittal in a criminal case does not collaterally estop the relitigation of the question of innocence in a later civil proceeding.

[7] Rule 1005 of the Federal Rules of Evidence expresses the preference accorded certified copies of public records in the federal courts. Mr. Ealy has submitted what appears to be a copy of a certified copy of the judgment against Mr. Davis. Although this submission does not comport

- 11 -

proper this Court's consideration of those arguments. Doc.
#137, exh. 1.

Mr. Ealy's argument is that, in convicting Mr. Davis of
assault, the jury was required to find that Mr. Davis used
excessive or unreasonable force in arresting Mr. Ealy.[8] The
Fourth Amendment prohibits a police officer from using
excessive or unreasonable force in making an arrest. Graham
v. Connor, 490 U.S. 386, 395 (1989). Mr. Ealy asserts,
therefore, that the question whether Mr. Davis violated Mr.
Ealy's rights under the Fourth Amendment has already been
fully and fairly litigated and determined.

Mr. Davis denies that the Fourth Amendment issue was
litigated, and furthermore states that, because his conviction
has been expunged pursuant to section 2953.32 of the Ohio
Revised Code, the conviction and proceedings cannot have
collateral estoppel effect.

---

with Rule 1005, the flaw ought to be easily remediable, as the Court
infers from the submission of a copy of a certified copy that Mr. Ealy has
access to a certified copy. Therefore, in accordance with Rule 1005, Mr.
Ealy should within twenty (20) days from the date of this entry submit a
certified copy of the judgment or, in the alternative, explain to the
Court why a certified copy "cannot be obtained by the exercise of
reasonable diligence," in which case the Court will consider accepting the
uncertified copy attached to the motion.

[8] The Court does not read the motion to suggest that this Court find that
the conviction of Mr. Davis has collateral estoppel effect on the other
individual Defendants with regard to claims that any of them used
excessive force. Neither does it read the motion to suggest that it find
that the conviction has collateral estoppel effect with regard to any
other issue (e.g., probable cause, innocence) in this case. If the motion
is so intended, it is overruled to the extent that it suggests such
findings because Mr. Ealy points to no evidence in the record that any
determination on any other issue (i.e., any issue aside from the excessive
force allegation) was necessarily decided in the criminal proceedings
against Mr. Davis.

- 12 -

The criminal proceedings against Mr. Davis present two questions. First, was the question of the use of excessive force litigated and determined? Second, if there was such a determination, does that determination have collateral estoppel effect in these proceedings?

The Court finds that the jury in the criminal case against Mr. Davis did find that Mr. Davis used excessive force in arresting Mr. Ealy on March 14, 1990. In Ohio, a police officer is justified in using the force necessary to subdue a suspect, but may be held liable for the use of excessive force. State v. Yingling, 44 N.E.2d 361 (Summit Cty 1942). Although the record of the proceedings against Mr. Davis is not before the Court in its entirety, the decision on Mr. Davis' appeal from his conviction to the Court of Appeals for the Second Appellate District, Montgomery County, is reported at 1992 Ohio App. LEXIS 5037.[9] In that decision, the Court of Appeals ruled that the trial judge had properly instructed the jury that an arresting officer "is justified to use such physical force against a private citizen as is necessary and sufficient to accomplish the arrest of that person." State v. Davis, 1992 Ohio App. LEXIS 5037, *4 (Montgomery Cty 1992).

Therefore, in order to have found Mr. Davis guilty of assault, the jury must have determined that the force he used in effecting the arrest of Mr. Ealy was greater than that

---

[9] A LEXIS search of Ohio cases yields State v. Davis as the most recent opinion citing the Yingling decision.

AO 72A
(Rev. 8/82)

force necessary and sufficient to accomplish the arrest of Mr. Ealy, or, more simply, that the force used was excessive.

In Allen v. McCurry, 449 U.S. 90, (1980), the Supreme Court decided that proceedings in state courts could have collateral estoppel effect in suits brought in federal courts under § 1983. Justice Stewart, citing 28 U.S.C. § 1738, wrote for the Court that, ". . . Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" Allen, 449 U.S. at 96. In determining whether the prior criminal proceedings against Mr. Davis collaterally estop him from denying that he violated Mr. Ealy's Fourth Amendment right to be free from unreasonable seizure, this Court must look to Ohio law.

"In Ohio, the general rule is that mutuality of parties is a requisite to collateral estoppel, or issue preclusion. As a general principle, collateral estoppel operates only where all of the parties to the present proceeding were bound by the prior judgment." Goodson v. McDonough Power Equipment, Inc., 2 Ohio St.3d 193, 443 N.E.2d 978 (1983) (paragraph one of the syllabus). Under this general rule, Mr. Ealy would have to show that he was, somehow, a party to the proceedings against Mr. Davis if he (Mr. Ealy) wished to preclude Mr. Davis from relitigating the excessive force question.

It will be noted, however, that the Goodson Court was careful to state this mutuality requirement as a "general rule" or "general principle." Within the body of the opinion,

- 14 -

the Court gave an example of what it considered a "proper" exception to the mutuality rule, to wit, "[U]nder those facts where it was shown that the party defendant clearly had his day in court on the specific issue brought into litigation within the later proceeding, the non-party plaintiff could rely upon the doctrine of collateral estoppel to preclude the relitigation of that specific issue." Goodson, 2 Ohio St.3d at __ , 443 N.E.2d at 985.

Goodson was a case in which a lawnmower had been found by a Florida jury, deciding a case arising from an accident in Florida, to have been defectively designed and an Ohio plaintiff sought to invoke collateral estoppel on the design issue against the manufacturer in an Ohio suit arising from an accident in Ohio. Id. at __ , 443 N.E.2d at 980. The Goodson Court was particularly concerned with the fact that "the former adjudication of the issues arose out of a separate underlying incident." Id. at __ , 443 N.E.2d at 987. In the case before this Court, there is no such concern. The incident that was the basis of the adjudication in the criminal proceeding against Mr. Davis is precisely the same incident that would be in question in this action (i.e., the use of force by Mr. Davis in arresting Mr. Ealy on March 14, 1990).

This Court finds that an Ohio court would determine that "the specific issue" regarding the excessive force claim against Mr. Davis is identical to that presented in the prior criminal proceeding against him. Following the Goodson

- 15 -

requirements for exception to the mutuality rule, the question becomes whether an Ohio court would find that Mr. Davis "clearly had his day in court" on the issue of whether he used excessive force in arresting Mr. Ealy on March 14, 1990.

It is not difficult to see that an Ohio court would so find. Whether Mr. Davis used excessive force was an absolutely critical issue in the criminal prosecution against him. Knowing, as he must have, that a conviction would jeopardize his livelihood and his liberty, he obviously had every incentive to argue to the best of his ability that he did not use such force. Furthermore, Mr. Davis appealed the conviction, and specifically assigned as error the trial judge's instruction regarding the justifiability of an officer's use of force. In considering that assignment of error, the appellate court provided yet another forum in which Mr. Davis had the opportunity to litigate the excessive force issue.

It is the conclusion of this Court that an Ohio court would find that, having had the opportunity and incentive to fully litigate the question in the Court of Common Pleas and in the Court of Appeals, Mr. Davis "clearly had his day in court on the specific issue" of whether he used excessive force in arresting Mr. Ealy.

This Court's inquiry into Ohio law cannot end with that finding, however. Mr. Davis points out that his assault conviction has been expunged pursuant to section 2953.32 of

the Ohio Revised Code.[10] He argues that, because of the expungement, "Ohio courts would treat Officer Davis's conviction as a nullity." Doc. #146 at 10.

In support of this contention, Mr. Davis cites language from two provisions of the expungement law. Doc. #146 at 9 - 10. First, he directs the Court's attention to the portion of § 2953.32(C)(2) that provides, in part, that "[t]he proceedings in the case shall be considered not to have occurred[.]" Second, he notes that § 2953.33(B) mandates that, in "any appearance as a witness . . . a person may be questioned only with respect to convictions not sealed[.]"

Read literally, the former phrase would be enough of a basis to sustain Mr. Davis' argument. However, the Ohio Supreme Court has observed that such a literal reading would be inappropriate.

> It is clear from the statute that expungement does not literally obliterate the criminal record. The sealed record of the case may be inspected by any law enforcement authority or prosecutor to aid in the decision to file charges on any subsequent offenses involving the defendant. R.C. 2953.32(D)(1). The information may be recited in the charging document. R.C. 2953.32(D)[following para. (8)]. An expunged record of conviction may be used where otherwise admissible as evidence in any criminal proceeding. R.C. 2953.32(E). Further, the record may be used by anyone specifically authorized by the defendant whose record was expunged and sealed. R.C. 2953.32(D)[(3)].

---

[10] Although Mr. Davis asserts that, "a certified copy of a judgment entry sealing the record of Defendant Davis was previously submitted to this Court[,]" the copy of the "entry" submitted with his motion in limine (Doc. #122) bears no mark on the signature line prepared for Judge Meagher. The Court assumes, however, that a certified copy of the sealing order is accessible to Mr. Davis, and asks that he submit such a certified copy within twenty (20) days from the date of this entry. See note 7, above.

- 17 -

<u>City of Pepper Pike v. Doe</u>, 66 Ohio St.2d 374, __, 421 N.E.2d 1303, 1306-1307 (1981).

Indeed, the statute includes a host of exceptions to the prohibition of reference to the sealed conviction. <u>See</u> O.R.C. § 2953.32(D)(1)-(8). Even § 2953.33(B), cited by Mr. Davis as prohibiting the questioning of a person on a conviction when that conviction has been expunged, contains a caveat. That section provides, in pertinent part, that,

> In any application for employment, license, or other right or privilege, any appearance as a witness, or other inquiry . . . a person may be questioned only with respect to convictions not sealed . . . <u>unless the question bears a direct and substantial relationship to the position for which the person is being considered</u>.

O.R.C. § 2953.33(B) (emphasis added). The Ohio Supreme Court has chosen to construe the exception broadly, finding that it covers not merely narrowly focused inquiries related to applications for employment, but in such areas as eligibility for admission to the bar and eligibility to seek elected public office. <u>In Re Application of Davis</u>, 61 Ohio St.2d 371, 403 N.E.2d 189 (1980) (bar application); <u>State v. Bissantz</u>, 40 Ohio St.3d 112, 532 N.E.2d 126 (1988) (bribery conviction may be expunged, but nevertheless will bar convict from holding public office).

It is apparent from the statute itself and from its interpretation by the Ohio Supreme Court, therefore, that despite the sweeping language cited by Mr. Davis, a conviction that is sealed is nevertheless properly given weight in a variety of circumstances. This Court must determine whether

- 18 -

an Ohio court would find that the prior proceedings against Mr. Davis survive statutory expungement for collateral estoppel purposes.

The statute itself does not speak of collateral estoppel. However, at least one explicit statutory provision requires Ohio courts to recognize the continuing viability of the legal determinations made in the sealed proceedings. Section 2953.34 provides, in part, that nothing in the expungement statute precludes a person whose conviction has been sealed "from relying on it in lieu of any subsequent prosecution for the same offense." In essence, this section requires Ohio courts to take notice of expunged proceedings for purposes of preventing double jeopardy.[11] Thus, there is a basis in the statute for an Ohio court to recognize a sealed conviction for the purposes of answering the question, "Has this matter been adjudicated?" It is precisely that question that a court applying Ohio law must ask in making a determination regarding the applicability of collateral estoppel under Goodson.

Expungement, in Ohio, is essentially a reputational remedy. Thus, an expunged conviction is "a nullity" for purposes of impeaching a witness' credibility. Ohio R. Evid. 609(C). For purposes of ruling on Mr. Ealy's motion for partial summary judgment, the Court does not consider Mr. Davis' conviction to be offered for its reputational effect,

---

[11] Of course, a person whose conviction has been expunged can always raise the issue of this sealed conviction as a means of pleading the bar of former jeopardy.

but rather for its demonstration that there has already been a finding, necessarily appurtenant to the conviction, on this issue in an Ohio court which has direct bearing on the proceedings herein. It is this Court's conclusion that an Ohio court would permit such a use of an expunged conviction.[12]

## IV. Defendant Davis' Motion In Limine (Doc. #122)

As it is this Court's practice not to rule on evidentiary motions in limine until there has been discussion including counsel for all parties and the Court as to the context(s) in which the evidence sought to be excluded will be offered, the Court overrules, without prejudice, subject to renewal in oral fashion prior to trial, Mr. Davis' Motion in Limine. Doc. #122. That motion seeks to exclude evidence regarding both the prior conviction of Mr. Davis and the prior acquittal of Mr. Ealy in the criminal trials that resulted from the events that are the source of the current litigation.

Although substantive ruling on the motion is not made, the Court will take this opportunity to make a few preliminary observations on the admissibility questions. While it was determined, above, that Mr. Davis' expunged conviction is properly considered for purposes of assessing its collateral

---

[12] Expungement pursuant to § 2953.32 is based, in part, on a finding by the expunging court that "rehabilitation of an applicant . . . has been attained to the satisfaction of the court[.]" O.R.C. § 2953.32(C)(2). This is not a case in which the record has been expunged due to a finding of innocence or of some impropriety in the prior proceedings. Either of those situations would invoke an analysis entirely different from that above.

estoppel effects, no consideration was given to its admissibility for other purposes. It may well be that evidence of Mr. Davis' conviction is admissible for certain purposes (e.g., for the Court's consideration on the collateral estoppel issue) but not for others (e.g., before a jury for impeachment purposes). Similarly, while it is generally the rule in the Sixth Circuit that an acquittal (as that of Mr. Ealy) is inadmissible for the purpose of demonstrating innocence, its admission is a necessary part of the case by a plaintiff in an action for malicious prosecution. See McKinney v. Galvin, 701 F.2d 584, 586, n.5 and accompanying text (1983); Rogers v. Barbera, 170 Ohio St. 241, 164 N.E.2d 162 (1960) (syllabus, paragraph one) (termination of prosecution in the accused's favor listed among essential elements of malicious prosecution). Thus, it may be that evidence of the conclusions of both of the prior criminal proceedings herein considered will be admissible for some purposes, but not for others.

Accordingly, the Motions of Defendant Richard Scott Davis for Partial Summary Judgment (Doc. #125) and Separate Trials (Doc. #124) are sustained. The uncorrected Motion of Defendant Richard Scott Davis for Separate Trials (Doc. #121) is declared moot. Plaintiff Larry Ealy's Motion for Partial Summary Judgment (Docs. ##135 and 137) is overruled, except that it is sustained to the extent that it seeks a determination that Defendant Davis is collaterally estopped

- 21 -

from denying that he used excessive force in effecting the arrest of Plaintiff Ealy on March 14, 1990, and it is sustained to the extent that it seeks to prevent the City of Dayton from asserting the defense of qualified immunity. The Defendants' Motions to Strike the Declaration of W. Anthony Willoughby (Docs. ##145 and 146) are sustained in part and overruled in part as described above. The Motion in Limine by Defendant Davis (Doc. #122) is overruled, without prejudice, subject to renewal in oral fashion prior to trial.

The ruling sustaining in part Plaintiff Ealy's Motion for Partial Summary judgment is conditioned upon the filing by Plaintiff Ealy of a certified copy of the state court judgment against Defendant Davis or, in the alternative, an explanation as to why such a certified copy cannot be filed. Such filing is to be made within twenty (20) days of this entry.

Defendant Davis is ordered to file a certified copy of the state court judgment sealing his conviction or, in the alternative, an explanation as to why such a certified copy cannot be filed. If the latter, Defendant Davis should, at the least, submit some evidence that the sealing order attached to his Motion in Limine (Doc. #122) was signed. Such filing is to be made within twenty (20) days of this entry.

February 6, 1994

_WALTER HERBERT RICE_
**WALTER HERBERT RICE**
**UNITED STATES DISTRICT JUDGE**

AO 72A
(Rev. 8/82)

Copies to:

Neil F. Freund, Esq. / Lisa A. Hesse, Esq.
Ronald P. Keller, Esq.
Charles Andrews, Esq.
W. Anthony Willoughby, Esq.

AO 72A
(Rev. 8/82)